IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES RANSOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-07-71-D |
| | ) |
| DR. EDSALL, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff James Ransom, a pro se private prison inmate in the custody of the State of Oklahoma, has brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Edsall and Maize violated his constitutional rights through their deliberate indifference to his serious dental needs during his confinement at the Great Plains Correctional Facility [Doc. No. 1]. The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A Special Report was filed by Defendants Edsall and Maize [Doc. No. 18] in accordance with this court's order[1] and with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Defendant Maize has moved for dismissal or, alternatively, for summary judgment [Doc. No. 22].[2] By his motion, Defendant Maize alleges that Plaintiff failed to exhaust his administrative remedies before filing his complaint and further contends that Plaintiff has failed to

---

[1]The Special Report was submitted by the Great Plains Correctional Facility which is a private prison that at one time housed inmates pursuant to a contract with the Oklahoma Department of Corrections [Doc. Nos. 1, p. 2 and 18, p. 4]. The Special Report was verified by Travis Smith, Deputy Warden, Great Plains Correctional Facility [Doc. No. 18, p. 8].

[2]Although he jointly submitted the Special Report with Defendant Maize [Doc. No. 18, p. 1], Defendant Edsall has not filed a responsive pleading or motion in this matter. The docket sheet reflects a return of service on Defendant Edsall by certified mail [Doc. No. 16].

establish deliberate indifference to his dental needs. For the following reasons, it is the undersigned's recommendation that Defendant Maize's motion for summary judgment be granted and judgment entered on his behalf.

**Plaintiff's Complaint**

In describing the background and nature of his case, Plaintiff maintains that when he was first incarcerated by the State in February, 2002, he was assessed with "serious dental needs" including tooth extractions and dentures [Doc. No. 1, p. 2].[3] Plaintiff claims that Defendant Maize – the "Private Prison medical Director," *id.* – repeatedly advised him during the time period from 2003 through 2006 that, by policy, he was not "eligible for partial or full dentures unless and until all teeth [were] extracted." *Id.* at 3. Referencing a "phanton [sic] waiting list," he further alleges that he received no treatment until October, 2005 despite administrative requests to staff and letters to prison authorities. *Id.* Plaintiff states that he was not scheduled for an appointment until after writing a letter to the Governor, *id.* and Exhibit H, and that on October 2, 2005, Defendant Edsall extracted one tooth "as a preparatory step for dentures." *Id.* Plaintiff then maintains that approximately four months later,[4] Defendant Edsall extracted two more teeth "after having induced the plaintiff to sign a consent for serious injurings [sic] by the defendant Edsall" and with the intent to punish Plaintiff for his efforts – including his letter to the Governor – in compelling his dental treatment. *Id.* Plaintiff complains that

---

[3]While Plaintiff states that this determination was recorded in his medical files and references Exhibits A and D to his complaint, neither exhibit is a medical record.

[4]Plaintiff states that his next treatment "approx. 4 months (from the 10-2-2005 extraction) was on 3/9/2005." [Doc. No. 1, p. 3]. Presumably, Plaintiff means March 9, *2006*.

2

he was given only a "bare minimum" of pain medication which failed to deaden the extraction sites and describes his teeth being "vicious[ly] and maliciously" removed with "a plier like instrument" while Plaintiff was physically restrained by Defendant Edsall and his assistants. *Id.* at 3 - 4. Plaintiff alleges that he was discharged with no pain medication and suffered for three days from pain and heavy bleeding. *Id.* at 4.

Plaintiff further pleads that he was seen by Defendant Edsall for his continued bleeding and pain on 10/6/2005.[5] *Id.* He claims that Defendant Edsall continued to deny him pain medication but "placed a brown substance (possibly iodine)" on Plaintiff's gums causing Plaintiff to immediately begin vomiting. *Id.* Plaintiff alleges that he continued to vomit and to experience extreme pain and, after returning to the medical unit, was "transported emergency status to [a] hospital located in Oklahoma City" where he "was rushed into emergency surgery" the following day. *Id.* at 4 - 5. Plaintiff maintains that multiple surgeries were performed "to remove the infection or poison,"[6] *id.* at 5; that he "remained hospitalized for a month and two weeks recovering"; that he lost forty pounds; and, "upon return to the Great plains prison received no pain medications for the intense pain and sufferings at the surgery site." *Id.* By way of relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 8.

---

[5]Once again, the undersigned is presuming that Plaintiff means March of 2006.

[6]Plaintiff alleges that medical personnel, presumably at the hospital, told him that "his system was poisoned by either a foreign substance or an infection (possible abcess [sic])." [Doc. No. 1, p. 5]. Plaintiff also alleges that prior to the extractions his blood sugar levels were within normal range and that the teeth which were extracted were not in any way damaged but that the private prison and the Oklahoma Department of Corrections policy required the extraction of all teeth before dentures would be approved. *Id.*

3

**Standard of Review - Summary Judgment**

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving] party." *Id.* at 252. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Analysis**

    **Exhaustion of Administrative Remedies**

Defendant Maize's initial contention in moving for summary judgment is that Plaintiff failed to adequately exhaust the administrative remedies available to him at the Great Plains Correctional Facility. Specifically, Defendant Maize argues Plaintiff did not file any grievance pertaining to his allegations in connection with the actions of this particular Defendant and did not fully exhaust the one grievance he actually filed.

4

Defendant Maize further alleges that the undisputed material facts establish that he is entitled to judgment as a matter of law.

The Prison Litigation Reform Act of 1995 ("PLRA")[7] requires that a prisoner exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a), provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S.Ct. at 918 - 919 (2007).

There is no dispute between the parties that Plaintiff was required to exhaust his administrative remedies pursuant to the DOC grievance procedures, OP-090124.[8] *See* Inmate/Offender Grievance Process, OP-090124 [Doc. No. 18, Exhibit 10]. This process requires an initial, informal attempt to resolve a complaint by talking with the case manager, supervising employee or other appropriate staff. *Id.* at IV(A). If the matter remains unresolved, the inmate must then submit a written "Request to Staff," briefly but specifically describing his complaint. *Id.* at IV(B). Should the informal attempts at resolution fail, the inmate's next step is submission of a "Inmate/Offender Grievance Report Form." *Id.* at V(A). An unfavorable response to the grievance may then be

---

[7]The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e.

[8]Plaintiff does not contest the applicability of the policy but maintains, instead, that he fully met its requirements [Doc. No. 24, pp. 1 - 2].

appealed to the administrative review authority or chief medical officer, as appropriate. *Id.* at VII. The ultimate ruling of the administrative review authority or chief medical officer concludes the administrative process available to an inmate through the Oklahoma Department of Corrections. *Id.* at VII(D).

Administrative documents of record show that Plaintiff directed a request to staff to the "Dentist" in March, 2003, asking "to get my teeth done." [Doc. No. 1, Exhibit A]. In response, Plaintiff was advised that it did not appear he needed a filling or to have any teeth pulled but that an examination would be scheduled. *Id.* A little over a year later, Plaintiff submitted another request to dental staff stating that he wanted "to get some dental work done for some partial because I have bean [sic] haveing [sic] problem chewing my food." *Id.* at Exhibit B. The request to staff was returned with the explanation that Plaintiff had failed to follow instructions. *Id.* Then, in August, 2005, Plaintiff turned in a third request to staff, noting that he had been on a waiting list since January 17, 2005, to have some teeth extracted in preparation for dentures and asking how much longer he would have to wait. *Id.* at Exhibit G. Plaintiff was advised that he did not make the decision to have the procedure until April 8, 2005, at which time he was placed on a waiting list, a list which was being fairly administered. *Id.* No grievances were submitted in connection with these three requests to staff [Doc. No. 18, p. 6].

The only grievance submitted by Plaintiff was preceded by a April, 2006 request to staff in which Plaintiff stated that his medical problems began on March 3, 2006, when two of his teeth were extracted by a dentist [Doc. No. 1, Exhibit I, pp. 2 - 3]. He maintained that he had to have the extractions because the Oklahoma Department of

6

Corrections required that he have all of his teeth extracted before he would be approved for dentures. *Id.* at Exhibit I, p. 2. He further claimed that he had to seek help from the Governor to compel the dental staff at Great Plains Correctional Facility "to attend to his dental problems[,]" *id.* at Exhibit I, p. 3, and that "[i]t is for this reason [Plaintiff] believes he was targeted and retaliated." *Id.* He then complains about the "medical negligence" of the dentist who performed the extractions, about the subsequent application by the dentist of the "brown substance" on the extraction sites, and about his hospitalization and surgeries. *Id.* Monetary damages and related relief were requested. *Id.*

Plaintiff's request was denied, and he then filed a grievance in which he incorporated his request to staff by reference. *Id.* at Exhibit I, p. 1. The grievance was denied on the grounds that dental and medical staff provided appropriate care at all times; that Plaintiff signed a consent to treatment which disclosed the risks and complications and of the procedure; and, that Plaintiff's post-operative infection was a result of his diabetes. *Id.* at Exhibit I, p. 4.

Plaintiff then appealed this result to the Oklahoma Department of Corrections Medical Director, claiming that Defendant Edsall failed to properly inquire about Plaintiff's diabetes before treating Plaintiff and caused a "potentially life-threatening situation along with needless pain and suffering." *Id.* at Exhibit I, p. 5. The appeal was returned, once as improperly submitted, *id.* at Exhibit I, p. 9, and again as presenting issues which were non-grievable. *Id.* at Exhibit I, p.8.

The foregoing review of Plaintiff's administrative filings establishes that Plaintiff submitted a succession of requests to staff complaining of a delay in receiving dental

7

treatment, a delay which he maintains is attributable to Defendant Maize as the prison medical director through his maintenance of a "phanton [sic] waiting list" for such treatment [Doc. No. 1, p. 3]. Plaintiff, however, failed to grieve the responses he received to these requests. In the only request to staff which he did grieve and appeal, Plaintiff changed his focus, claiming that his medical problems began with a March, 3, 2006, dental visit. His complaint was that the *dentist*, whether through negligence or in retaliation against Plaintiff for writing a letter to the Governor complaining of delays by the "dental staff," [Doc. No. 1, Exhibit I, p.3 (emphasis added)], allegedly caused injury to Plaintiff. Plaintiff's appeal to the Oklahoma Department of Corrections Medical Director likewise fails to make any complaint against the actions of Defendant Maize but references only improper treatment by Defendant Edsall, the dentist.

Thus, while Plaintiff's grievance supplied prison officials with adequate information to allow them to investigate Plaintiff's allegations and to take appropriate action with regard to the care provided by prison dental staff, *see Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006), it made no claim that a phantom waiting list for dental care was allegedly being employed by the medical director, and prison officials had no opportunity to address this issue before Plaintiff's lawsuit was filed.[9] Consequently, Plaintiff failed to administratively exhaust this claim.[10] *Id.* at 1285. Defendant Maize has met his burden of affirmatively establishing that Plaintiff failed to administratively

---

[9]It is noted that while Plaintiff affirmatively pled that he exhausted all administrative remedies with regard to Defendant Edsall, no mention was made of Defendant Maize [Doc. No. 1, p. 2].

[10]In light of this conclusion, the undersigned has not considered Defendant Maize's argument that Plaintiff did not fully exhaust the grievance which he did file.

exhaust his claims involving Defendant's alleged conduct prior to filing this action and is, accordingly, entitled to summary judgment.

### Delay in Providing Dental Treatment to Plaintiff

Alternatively, the undisputed facts in this matter belie Plaintiff's claims of "phantom" waiting lists and unwarranted delay by Defendant Maize – who is not a dentist but a health services administrator [Doc. No. 22, p. 2 and Doc. No. 24, p. 3] – in connection with Plaintiff's dental care:

(1) Plaintiff admits that he "was received by [Great Plains Correctional Facility] in late 2002 [with] pre-existing dental problems and, when examined, his teeth were unclean and unhealthy." He further admits that, "On June 12, 2003 he was advised he needed to have his teeth cleaned and . . . refused to allow the contracted dentist to clean his teeth." *Id.*

(2) Plaintiff admits that he requested dentures on April 8, 2005, and that the dentist's "advice was to clean Plaintiff's teeth in order to allow him to keep all natural teeth possible." [Doc. No. 22, p. 3 and Doc. No. 24, p. 3]. Plaintiff admits that he rejected that advice [Doc. No. 24, p. 3]. Plaintiff denies the following portion of the undisputed fact submitted by Defendant Maize: "[On April 8, 2005,] a treatment plan that would allow extractions necessary for dentures was set up." *Id.* The documentary evidence of record, however, establishes that a treatment plan bearing Plaintiff's signature was made on that date [Doc. No. 18, Exhibit 4].

(3) Plaintiff admits that beginning six months later, "On October 6, 2005 and March 9, 2006, teeth were extracted in preparation for fitting dentures." [Doc. No. 22, p.

9

3 and Doc. No. 24, pp. 3 - 4].[11] He denies, however, that his diabetes was taken into consideration [Doc. No. 24, pp. 3 - 4].

Apart from these admissions, in his response to Defendant Maize's summary judgment motion Plaintiff offers neither argument nor evidence that he suffered any injury as a result of any delay in dental treatment by Defendant Maize through a "phantom" waiting list. In fact, Defendant Maize is not even mentioned in the response. Instead, Plaintiff attached an affidavit in which he avers that his medical problems began with the extractions on March 3, 2006, and that his complications were caused by the failure to treat his diabetes before the "brown substance" was applied to his gums [Doc. No. 24, Affidavit, p. 1]. "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted)). Accordingly, in the absence of disputed material facts and any claim of injury, Defendant Maize is entitled to summary judgment in this matter as a matter of law.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reason that Plaintiff failed to exhaust his administrative remedies in connection with the alleged actions of Defendant Maize and, alternatively, for the reason

---

[11] In connection with Plaintiff's allegation that the Oklahoma Department of Corrections required extraction of all teeth before allowing dentures, Progress Notes from October 6, 2005, demonstrate that Plaintiff was allowed to decline a tooth extraction before proceeding to the next phase of his treatment plan [Doc. No. 24, Exhibit 3]. That same entry shows that despite Plaintiff's contention that "the teeth extracted where [sic] not damaged in any way" [Doc. No. 1, p. 5], the extracted tooth was decayed to the point that Plaintiff detected that it had "a hole." *Id.* Plaintiff's exhibit – the April 8, 2005 entry – also reveals that Plaintiff's decision not to clean and retain his natural teeth was made because he could not tolerate the cleaning process. *Id.*

that Defendant Maize is entitled to judgment as a matter of law on Plaintiff's claim of delay in dental treatment, it is the recommendation of the undersigned Magistrate Judge, that Defendant Maize's motion for summary judgment [Doc. No. 22] be granted.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the __8th__ day of November, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation only partially disposes of the issues referred to the undersigned Magistrate Judge in the present case; Defendant Edsall remains a named party.

IT IS SO ORDERED this __19__ day of October, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE