## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES RANSOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. CIV-07-71-D** |
| | ) | |
| DR. EDSALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff James Ransom, who is appearing *pro se* and is an inmate in the custody of the State of Oklahoma, brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Edsall and Maize violated his constitutional rights through their deliberate indifference to his serious dental needs during his confinement at the Great Plains Correctional Facility [Doc. No. 1]. The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A Special Report[1] was filed by Defendants Edsall and Maize [Doc. No. 18] in accordance with this court's order and with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Defendant Maize's motion for dismissal or, alternatively, for summary judgment [Doc. No. 22] was previously granted by this court [Doc. No. 31] on the recommendation of the undersigned [Doc. No. 25]. Defendant Edsall has now filed his motion for summary judgment [Doc. No. 43] to which

---

[1]The Special Report was submitted by the Great Plains Correctional Facility which is a private prison that housed inmates pursuant to a contract with the Oklahoma Department of Corrections [Doc. Nos. 1, p. 2 and 18, p. 4]. The Special Report was verified by Travis Smith, Deputy Warden, Great Plains Correctional Facility [Doc. No. 18, p. 8].

Plaintiff has failed to respond despite the undersigned's *sua sponte* order extending his response time and advising him of the consequences of failing to controvert Defendant Edsall's statement of material facts [Doc. No. 44].   For the reasons which follow, the undersigned recommends that Defendant Edsall's motion for summary judgment on Plaintiff's federal claims be granted and that, absent a remaining federal claim and any objection by Plaintiff, Plaintiff's supplemental claim for medical malpractice under state law be dismissed without prejudice.

## Plaintiff's Complaint

In describing the background and nature of his case, Plaintiff maintains that when he was first incarcerated by the State in February, 2002, he was assessed with "serious dental needs" including tooth extractions and dentures [Doc. No. 1, p. 2].[2]  Plaintiff claims that Defendant Maize – the "Private Prison medical Director," *id.* – repeatedly advised him during the time period from 2003 through 2006 that, by policy, he was not "eligible for partial or full dentures unless and until all teeth [were] extracted."  *Id.* at 3.  Referencing a "phanton [sic] waiting list," he further alleges that he received no treatment until October, 2005 despite administrative requests to staff and letters to prison authorities.  *Id.*  Plaintiff states that he was not scheduled for an appointment until after writing a letter to the Governor, *id.* and Exhibit H, and that on October 2, 2005, Defendant Edsall extracted one tooth "as a preparatory step for dentures." *Id.* Plaintiff then maintains that approximately four months

---

[2]While Plaintiff states that this determination was recorded in his medical files and references Exhibits A and D to his complaint, neither exhibit is a medical record.

later,[3] Defendant Edsall extracted two more teeth "after having induced the plaintiff to sign a consent for serious injurings [sic] by the defendant Edsall" and with the intent to punish Plaintiff for his efforts – including his letter to the Governor – in compelling his dental treatment. *Id.* Plaintiff complains that he was given only a "bare minimum" of pain medication which failed to deaden the extraction sites and describes his teeth being "vicious[ly] and maliciously" removed with "a plier like instrument" while Plaintiff was physically restrained by Defendant Edsall and his assistants. *Id.* at 3 - 4. Plaintiff alleges that he was discharged with no pain medication and suffered for three days from pain and heavy bleeding. *Id.* at 4.

Plaintiff further pleads that he was seen by Defendant Edsall for his continued bleeding and pain on 10/6/2005.[4] *Id.* He claims that Defendant Edsall continued to deny him pain medication but "placed a brown substance (possibly iodine)" on Plaintiff's gums causing Plaintiff to immediately begin vomiting. *Id.* Plaintiff alleges that he continued to vomit and to experience extreme pain and, after returning to the medical unit, was "transported emergency status to [a] hospital located in Oklahoma City" where he "was rushed into emergency surgery" the following day. *Id.* at 4 - 5. Plaintiff maintains that multiple surgeries were performed "to remove the infection or poison,"[5] *id.* at 5; that he "remained

---

[3]Plaintiff states that his next treatment  "approx. 4 months (from the 10-2-2005 extraction) was on 3/9/2005." [Doc. No. 1, p. 3]. Presumably, Plaintiff means March 9, 2006.

[4]Once again, the undersigned is presuming that Plaintiff means March of 2006.

[5]Plaintiff alleges that medical personnel, presumably at the hospital, told him that "his system
(continued...)

hospitalized for a month and two weeks recovering"; that he lost forty pounds; and, "upon return to the Great plains prison received no pain medications for the intense pain and sufferings at the surgery site." *Id.*

Plaintiff maintains that Defendant Edsall was deliberately indifferent to his dental needs in violation of the Eighth Amendment and that, in addition, Defendant Edsall's actions constituted malpractice under state law. *Id.* at 6. By way of relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 8.

## **Standard of Review**

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a *pro se* plaintiff's complaint is liberally construed, a *pro se* plaintiff must adhere to the same rules of procedure which are binding on all litigants. *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir.

---

[5](...continued)
was poisoned by either a foreign substance or an infection (possible abcess [sic])." [Doc. No. 1, p. 5]. Plaintiff also alleges that prior to the extractions his blood sugar levels were within normal range and that the teeth which were extracted were not in any way damaged but that the private prison and the Oklahoma Department of Corrections policy required the extraction of all teeth before dentures would be approved. *Id.*

2007). Thus, strict adherence by a *pro se* plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court has determined that:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Because Plaintiff failed to respond to Defendant's motion, he has failed to dispute Defendant's factual allegations under the federal procedural rule applicable to summary judgment determinations:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). In this same vein, the local rules of this court provide in part that "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR56.1(c).

## The Eighth Amendment

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including access to the basic necessities of medical care. *See Farmer v.*

*Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The United States Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners constitut[ing] the 'unnecessary and wanton infliction of pain,'" may amount to a violation of the Eighth Amendment. *Id.* at 104 (citation omitted). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a subjective component in which it must be shown that the offending officials acted with a sufficiently culpable state of mind. See *Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th Cir. 1991). As to the objective component, the Tenth Circuit has stated that a condition is sufficiently serious where the condition is one diagnosed by a physician as mandating treatment or that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. See *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). Such deliberate indifference may be shown where prison officials "have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos,* 639 F.2d at 575.

For a delay in medical treatment to be actionable as an Eighth Amendment violation, the delay "must, in itself, reflect deliberate indifference which results in substantial harm.'" *Fleming v. Uphoff*, No. 99-8035, 2000 WL 374295, at *3 (10th Cir. April 12, 2000)(quoting

*Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)).  The "substantial harm" or objective

element of this test is satisfied by a showing that a delay in treatment resulted in "lifelong

handicap, permanent loss, or considerable pain" and the "deliberate indifference" or

subjective element is satisfied by facts indicating that defendant prison officials were aware

of facts from which they could infer that the delay would cause a substantial risk of serious

harm and did, in fact, draw that inference.  *Garrett v. Stratman*, 254 F.3d 946, 949-50 ( 10th

Cir. 2001); see, e.g., *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001).

Not every claim of inadequate medical treatment rises to the level of a constitutional

violation.  A claim of medical malpractice or negligence plainly does not constitute a

constitutional violation.  *Estelle,* 429 U.S. at 105.  As the Supreme Court has stated:

> [A] complaint that a physician has been negligent in diagnosing or treating a
> medical condition does not state a valid claim of medical mistreatment under
> the Eighth Amendment. Medical malpractice does not become a constitutional
> violation merely because the victim is a prisoner. In order to state a cognizable
> claim, a prisoner must allege acts or omissions sufficiently harmful to evidence
> deliberate indifference to serious medical needs. It is only such indifference
> that can offend "evolving standards of decency" in violation of the Eighth
> Amendment.

*Id.* at 106.  *See Whitley v. Albers,* 475 U.S. 312, 319 (1986) (Eighth Amendment liability

requires "more than ordinary lack of due care for the prisoner's interests or safety"); *Handy,*

996 F.2d at 1067 (finding plaintiff's claim that prison doctor was negligent in treatment of

Hepatitis C did not constitute a constitutional violation).  Likewise, a  disagreement over a

course of treatment does not amount to a constitutional violation.  *Ramos,* 639 F.2d at 575

("a mere difference of opinion between the prison's medical staff and the inmate as to the

diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment").  Plaintiff's claim and the evidence in this case will be examined against these standards.

It is Plaintiff's contention that Defendant Edsall was deliberately indifferent to his serious dental needs both through the dental treatment provided and through his delay in providing such treatment [Doc. No. 1, sequential pp. 3 - 5].  In this regard, the undersigned finds that the following facts are uncontradicted:

1.    Defendant Edsall is a doctor of dental science who is licensed to practice dentistry in Oklahoma.  During the course of his treatment of Plaintiff, Defendant Edsall was an independent contractor providing dental care to inmates at Great Plains Correctional Facility. Defendant Edsall is also a practicing dentist who performs extractions of teeth on a regular basis, adhering to the standards of practice for his profession.  [Doc. No. 18, Exhibit 6, numbers 1, 2, 6, and 7].

2.    During the course of his work as a contract dentist at Great Plains Correctional Facility, the facility and not Defendant Edsall was responsible for patient scheduling; Defendant Edsall was not responsible for any delay in Plaintiff's dental care. [Doc. No. 18, Exhibit 6, number 10].

3.    On April 8, 2005, Plaintiff was seen by Dr. McDonald, another contract dentist at Great Plains Correctional Facility, and requested dentures.  Although Plaintiff was advised to have his teeth cleaned and to keep those teeth he had,

8

he stated that he could not tolerate the cleaning procedure.  Plaintiff made the decision to start extractions in preparation for dentures. [Doc. No. 18, Exhibit 6, number 5; Doc. No. 18, Exhibit 5].

4.      Plaintiff presented to Defendant Edsall on October 6, 2005, for extraction – extractions being common in order to allow the fitting of dentures – of tooth number 16. [Doc. No. 18, Exhibit 6, number 6; Doc. No. 18, Exhibit 5].

5.      In further preparation for Plaintiff's requested dentures, after administering pain medication into Plaintiff's gum area and in accordance with the standards of his profession,  Defendant Edsall extracted two more of Plaintiff's teeth - numbers 2 and 3 – on March 9, 2006.  Plaintiff was advised of the risks associated with a tooth extraction and signed a consent form.  [Doc. No. 18, Exhibit 6, number 7; Doc. No. 18, Exhibit 5; Doc. No. 18, Exhibit 7; Doc. No. 1, p. 3, paragraph k].

6.      While Plaintiff maintains that he was discharged from the dental office with no pain medication and claims that he endured three days of severe pain and heavy bleeding, he states that he "refused medically necessary attention, care, and treatment by the medical unitt [sic] staff on grounds the defendant Edsall nor any other dental staff on duty at the prison." [Doc. No. 1, p. 4, paragraphs l. and n.].[6]

---

[6]The undersigned finds that, most likely, Plaintiff intended to state that he *was* refused
(continued...)

7.      On March 13, 2006, Defendant Edsall was informed by another inmate that Plaintiff was feeling ill.  He called Plaintiff to the Dental Clinic for follow-up care and found that the extraction site was healing normally.  Defendant Edsall applied dry socket paste - Alvogyl – which alleviates pain and provides a soothing effect through the healing process and also gave Plaintiff an antibiotic and other pain medication.  Defendant Edsall's concern was with Plaintiff's uncontrolled and elevated blood sugar; he recommended that Plaintiff be placed in medical observation and the blood sugar problem addressed. [Doc. No. 18, Exhibit 6, number 8; Doc. No. 18, Exhibit 5].

The foregoing, undisputed facts demonstrate that Plaintiff wanted to be fitted with dentures and sought the necessary extraction of his teeth in order to effectuate that plan. Defendant Edsall performed the extractions[7] in his customary manner after obtaining Plaintiff's signed and witnessed  consent to the risks inherent to the procedure and after anesthetizing Plaintiff's gum area. If Plaintiff sought – and was denied – medical treatment for the three days of pain and heavy bleeding that allegedly followed the extraction procedure, he sought it from the staff at Great Plains Correctional Facility and not from Defendant Edsall.  When Defendant Edsall was made aware of Plaintiff's complaints, he

---

[6](...continued)
medical care by the staff at Great Plains Correctional Facility.  In either event, Plaintiff does not state that he made a request of Defendant Edsall which was refused.

[7]The evidence also shows that Defendant Edsall performed a previous extraction procedure with no complaints from Plaintiff.

treated him with topical medication, an antibiotic, and oral pain medication; he likewise recommended that Plaintiff be placed in medical observation for his blood sugar difficulties. And, contrary to Plaintiff's claim, there is no evidence that demonstrates that Defendant Edsall, a contract dentist who had no patient scheduling authority, was motivated to punish Plaintiff for any prior complaints made regarding a delay in treatment or for any other reason. Neither is there any evidence that demonstrates that Defendant Edsall performed the physical extraction in a "malicious" manner.

At best, Plaintiff's claim that he was anesthetized, but not properly so, for the extraction procedure, that the extraction procedure was painful, that he was given no pain medication on discharge, and that the topical medication utilized by Defendant Edsall caused a negative reaction, is one of malpractice and is not tantamount to deliberate indifference to Plaintiff's serious medical needs.   See *Estelle,* 429 U.S. at 106. The undersigned finds that the evidence of record fails to raise a genuine issue of material fact as to whether Defendant Edsall acted with deliberate indifference to Plaintiff's medical and/or dental condition.  It is therefore recommended that Defendant Edsall's motion for summary judgment be granted on Plaintiff's Section 1983 claim.[8]

## Supplemental Claim

---

[8]In light of this recommendation, the undersigned does not address Defendant Edsall's claim that Plaintiff failed to exhaust his administrative remedies or Defendant's Edsall's statute of limitations defense.

Plaintiff has also advanced a state law claim, alleging that Defendant Edsall has committed malpractice.  Through his motion for summary judgment, Defendant Edsall has requested that this court decline to assert supplemental jurisdiction over such claim [Doc. No. 43, pp. 14 - 15].  Plaintiff has voiced no objection to that request and, accordingly, it should be granted.

Federal law permits the court to decline supplemental over state law claims when "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The court should consider "'judicial economy, convenience, and fairness to the litigants'" in determining whether to exercise supplemental jurisdiction.  *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1550 (10th Cir. 1996) (citation omitted).  Absent any objection from the Plaintiff to Defendant Edsall's dismissal motion, the court should decline supplemental jurisdiction and dismiss Plaintiff's state law claim without prejudice to refiling.

## <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

It is recommended that Defendant Edsall's motion for summary judgment on Plaintiff's Section 1983 claims [Doc. No. 43] be granted, and it likewise recommended that Plaintiff's state law claim of malpractice be dismissed without prejudice.

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by the 9th day of July, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1(a).  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate

Judge in this matter.

ENTERED this 19th day of June, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE